Shepard Goldfein
Peter E. Greene
Cyrus Amir-Mokri
Karen Hoffman Lent
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
Phone:  (212) 735-3000
Fax:  (212) 735-2000
*Attorneys for Defendants*
*Merchant Link, LLC and Chase*
*Paymentech Solutions, LLC*

Richard E. Donovan
Lauri A. Mazzuchetti
KELLEY DRYE & WARREN LLP
200 Kimball Drive
Parsippany, New Jersey 07054
Phone: (973) 503-5900
Fax: (973) 503-5950
*Attorneys for Defendant*
*MICROS Systems, Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

HEARTLAND PAYMENT SYSTEMS, INC.,

                       Plaintiff,

         - against -

MICROS SYSTEMS, INC.,
MERCHANT LINK, LLC, AND
CHASE PAYMENTECH SOLUTIONS,
LLC,

                      Defendants.

    :   CIVIL ACTION NO. 3:07-cv-05629-FLW-TJB

    :   Returnable March 17, 2008
    :   (Oral Argument Requested)

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT**
**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................ 2

BACKGROUND ................................................................................................... 4

    A.    Heartland ................................................................................... 5

    B.    The Defendants ......................................................................... 5

    C.    The Challenged Agreement ....................................................... 6

    D.    Heartland's Antitrust Theories ................................................. 8

ARGUMENT ......................................................................................................... 9

I.    A DISTRICT COURT IS REQUIRED TO CAREFULLY
SCRUTINIZE AN ANTITRUST COMPLAINT ON A MOTION TO
DISMISS ...................................................................................................... 9

II.    HEARTLAND HAS FAILED TO ALLEGE SUFFICIENT
GROUNDS TO ESTABLISH ITS ENTITLEMENT TO RELIEF ON
ITS TYING THEORY OF ANTITRUST LIABILITY ............................. 10

    A.    POS Systems Buyers Are Not Forced to Purchase Gateway
Services; Thus No Impermissible Tying Arrangement Has Been
Alleged ................................................................................... 10

    B.    Heartland Has Failed to Allege Antitrust Harm Sufficient to
Give It Antitrust Standing ...................................................... 12

III.    HEARTLAND HAS FAILED TO ALLEGE SUFFICIENT
GROUNDS TO ESTABLISH ITS ENTITLEMENT TO RELIEF ON
ITS VAGUER CONSPIRACY THEORY ................................................ 16

IV.    HEARTLAND'S STATE LAW CLAIM SHOULD BE DISMISSED
FOR LACK OF JURISDICTION ............................................................ 21

CONCLUSION .................................................................................................... 23

# TABLE OF AUTHORITIES

## CASES

*Allegheny General Hospital v. Philip Morris, Inc.*, 228 F.3d 429 (3d Cir. 2000)...........................................................................5

*Allen-Myland, Inc. v. International Bus. Machine Corp.*, 33 F.3d 194 (3d Cir. 1994)...............................................................2

*Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983)...........................1

*Barton & Pittinos, Inc. v. SmithKline Beecham Corp.*, 118 F.3d 178 (3d Cir. 1997)...............................................................3

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007)...............1, 2, 7, 9-10

*Blue Shield v. McCready*, 457 U.S. 465 (1982) ............................................5

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494 (3d Cir. 1998)...............................................................2

*Brunson Commc'ns, Inc. v. Arbitron, Inc.*, 239 F. Supp. 2d 550 (E.D. Pa. 2002) ........................................................10, 11

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977)............3

*Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984) ..........2

*Casper v. SMG*, No. 00-3465, 2006 WL 3111132 (D.N.J. Oct. 31, 2006), *aff'd*, No. 06-4848, 2008 WL 227854 (3d Cir. Jan. 28, 2008) ...............................................................5

*Central Chemical Corp. v. Agrico Chemical Co.*, 531 F. Supp. 533 (D. Md. 1982), *aff'd*, No. 83-1603, 1985 WL 15439 (4th Cir. Aug. 23, 1985) ...............................................................5

*Conley v. Gibson*, 355 U.S. 41 (1957)...........................................................1

*Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984) ..... 8, 9

*DM Research, Inc. v. College of America Pathologists*, 2 F. Supp. 2d
226 (D.R.I. 1998), *aff'd*, 170 F.3d 53 (1st Cir. 1999)............................. 10

*DM Research, Inc. v. College of America Pathologists*, 170 F.3d 53
(1st Cir. 1999).................................................................................. 10, 11

*Figueroa v. Buccaneer Hotel, Inc.*, 188 F.3d 172 (3d Cir. 1999) ............... 13

*Gemco Latinoamerica, Inc. v. Seiko Time Corp.*, 685 F. Supp. 400
(S.D.N.Y. 1988)........................................................................................ 8

*Hawaii v. Standard Oil Co.*, 405 U.S. 251 (1972) ......................................... 3

*Jefferson Parish Hospital District No. 2 v. Hyde*, 466 U.S. 2 (1984)............ 2

*Kellam Energy, Inc. v. Duncan*, 668 F. Supp. 861 (D. Del. 1987)................. 2

*Kelly v. General Motors Corp.*, 425 F. Supp. 13 (E.D. Pa. 1976) ................ 4

*Medtronic Minimed Inc. v. Smiths Medical MD Inc.*, 371 F. Supp. 2d
578 (D. Del. 2005).................................................................................... 5

*Mitchael v. Intracorp, Inc.*, 179 F.3d 847 (10th Cir. 1999)............................ 9

*N. Pac. Railway Co. v. United States*, 356 U.S. 1 (1958) ......................... 2, 4

*Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173 (3d Cir. 1988)...... 1, 2

*Response of Carolina, Inc. v. Leasco Response, Inc.*, 537 F.2d 1307
(5th Cir. 1976) ......................................................................................... 4

*Reynolds Metals Co. v. Columbia Gas System, Inc.*, 669 F. Supp. 744
(E.D. Va. 1987)......................................................................................... 9

*Rochez Brothers, Inc. v. N. America Salt Co.*, No. 94-1131, 1994 WL.
735932 (W.D. Pa. Nov. 2, 1994)........................................................... 10

*S. Concrete Co. v. U.S. Steel Corp.*, 535 F.2d 313 (5th Cir. 1976)............... 4

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912 (3d Cir. 1999) ........................................................ 5, 6

*Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468 (3d Cir. 1992) .................................................................... 2

*Twombly v. Bell Atlantic Corp.*, 425 F.3d 99 (2d Cir. 2005) (quoting the complaint ¶ 46), *rev'd*, 127 S. Ct. 1955 (2007) .................................. 7

*United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) ............... 13

## STATUTES

28 U.S.C. § 136 ........................................................................ 12, 13

Defendants MICROS Systems, Inc. ("MICROS"), Merchant Link, LLC ("Merchant Link"), and Chase Paymentech Solutions, LLC ("Paymentech") (collectively, "Defendants") respectfully move this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Complaint of plaintiff Heartland Payment Systems, Inc. ("Heartland") in its entirety.

## PRELIMINARY STATEMENT

Despite its length, Heartland's antitrust claim rests on straightforward facts. Heartland and Paymentech are rival processors of credit card and debit card transactions. Paymentech owns Merchant Link, a provider of "gateway" services that connect processors to equipment that merchants use to swipe customers' cards. According to the Complaint, one manufacturer of such equipment, MICROS, has selected Merchant Link as its exclusive gateway services provider. On that basis, Heartland charges Defendants with unlawful tying and a conspiracy to restrain trade (both in violation of Section 1 of the Sherman Act), and charges Paymentech with unfair competition (in violation of New Jersey state law).

Heartland's tying allegations fail to state a cognizable claim. First, the Complaint does not, on its face, satisfy the elements of unlawful tying, which can occur only when the defendant sells one product (referred to as the "tying" product) on the condition that the buyer also purchase a different (or the "tied") product. But no such compulsory purchase could occur here:  as the Complaint itself

2

acknowledges, merchants who buy MICROS's equipment (the alleged "tying" product) get Merchant Link's gateway services (the alleged "tied" product) at no charge. (Compl. ¶ 36.) And the law is clear that an enterprise giving something away for free is not thereby "tying" it. Second, even had the Complaint's allegations satisfied the elements of a tying claim, Heartland would lack the requisite standing to advance its tying claim. To bring a tying claim, a plaintiff must suffer antitrust injury, either (i) because it buys both the desired tying product and the unwanted tied product, or (ii) because it competes with the defendant in selling the tied product. Heartland, however, has alleged neither (i) that it buys both MICROS's equipment and Merchant Link's gateway services, nor (ii) that it competes with Merchant Link. It therefore lacks standing to challenge the alleged tie.

Heartland's conspiracy claim fares no better, because it would be economically irrational for MICROS to have joined the alleged scheme. According to the Complaint, Defendants conspired to impose exorbitant fees on all processors (except Paymentech) that connect to MICROS equipment through Merchant Link; the processors, in turn, allegedly passed these fees along to the merchants who use MICROS equipment. In short, Heartland claims that MICROS conspired to raise the processing costs of its own merchant customers. For MICROS, this supposed conspiracy could only end badly, for it would inevitably

3

drive MICROS's customers into the hands of MICROS's competitors, who the Complaint acknowledges are legion.  (Compl. ¶¶ 29-30.)  Such facially implausible conspiracy allegations require prompt dismissal, as the United States Supreme Court admonished as recently as its last Term.

Once this Court dismisses Heartland's federal antitrust allegations, it should decline to exercise supplemental jurisdiction over the Complaint's remaining state law claims.

## BACKGROUND

When a consumer uses a credit or debit card (for simplicity, we will refer to these collectively as "payment cards") to pay a merchant, a series of electronic steps transmits the transaction data from the merchant to a bank.  The merchant first collects the customer's payment card information using point-of-sale ("POS") equipment – the "modern-day equivalent of cash registers of the past."  (Compl. ¶ 19.)  According to the Complaint, this equipment does not engage in the "actual processing" of payment card transactions to the bank; "outside processing companies, such as Heartland and Paymentech," perform that function.  (*Id.*)

But for POS equipment and processors to function together, "an interface – which is a software program that enables the transfer of transaction data between the merchant's POS system and the processing company's computer – is required."  (Compl. ¶ 33.)  Heartland alleges that an interface traditionally takes one of two

4

forms:  (i) a "direct interface" between the merchant's POS system and a processor of its choice, or (ii) a "gateway" that permits the merchant's POS system to interface with multiple processors.  (Compl. ¶¶ 33-34.)

According to the Complaint, when choosing a POS system, a merchant has several options.  It may purchase a POS system that already integrates one or more interfaces to connect directly with one or more processors; alternatively, it may purchase a POS system without an interface in it, and then separately arrange for such an interface, either directly with its processor or with a gateway company. (*Id.*)  Heartland alleges that, if the POS system does not contain an interface to the merchant's preferred processor, the merchant can obtain such an interface "for an additional charge."  (Compl. ¶ 33.)  Alternatively, the merchant may contract separately for gateway services with "any number of software companies" that generally charge merchants "an additional fee for each transaction."  (Compl. ¶¶ 34, 43.)

### A.    Heartland

Heartland provides payment card processing services.  (Compl. ¶ 15.)  It does not allege that it provides POS systems or "gateway" software.

### B.    The Defendants

The three Defendants – MICROS, Merchant Link and Paymentech – provide different and interrelated, but not competing, services as part of the process by

which a consumer uses a payment card to make a purchase. MICROS provides merchants with POS systems that enable those merchants to accept payment cards from their customers. (Compl. ¶ 19.) According to the Complaint, MICROS "is a leading developer of restaurant information systems comprising of hardware and software for point-of-sale and operations applications." (Compl. ¶ 16.) By contrast, Merchant Link is a "network-based gateway company that provides merchants with a single interface to all major" processors. (Compl. ¶ 17.) Finally, Paymentech processes payment card transactions and is the parent company of Merchant Link. (Compl. ¶ 18.)

### C.   The Challenged Agreement

The Complaint alleges that MICROS's POS systems do not contain integrated interfaces connecting them to payment card transaction processors. Rather, MICROS has allegedly made an exclusive arrangement with Merchant Link, pursuant to which Merchant Link provides gateway services to restaurants that purchase MICROS POS systems. (Compl. ¶ 37.) The Complaint alleges that one benefit to MICROS of that arrangement is that it "shifts the entire technical support burden away from" MICROS. (Compl. ¶ 8.) Neither MICROS nor Merchant Link charges these restaurants an additional fee for Merchant Link's gateway services. Instead, according to the Complaint, Merchant Link charges a fee to processors that wish to connect to its gateway interface. (Compl. ¶ 36.)

Heartland is one such processor.  (Compl. ¶ 49.)  Heartland considers this pricing model untraditional.  (*See* Compl. ¶¶ 33, 34.)[1]

Heartland complains that the arrangement between MICROS and Merchant Link requires it and other processors to use Merchant Link's gateway in order to interface with restaurants that use MICROS POS systems.  (Compl. ¶ 37.)  By no means does Heartland allege that this arrangement precludes it from servicing restaurants with MICROS systems (indeed, Heartland refers in the Complaint to its agreement with Merchant Link (*id.*)).  Rather, it alleges that "[g]ateway services can be provided by any number of software companies" other than Merchant Link (Compl. ¶ 43), and that "no technological impediment" inhibits MICROS from "having a direct interface with Heartland (or any other processor), eliminating the need for a gateway at all."  (Compl. ¶ 34.)  In short, Heartland challenges MICROS's decision to outsource the gateway and technical support function to Merchant Link, for which the merchants pay nothing to MICROS or to Merchant Link.  (Compl. ¶ 36.)

Heartland further complains that Paymentech's ownership of Merchant Link gives Paymentech an advantage in competing with other payment card processors, including Heartland.  (Compl. ¶ 38.)  According to the Complaint, the MICROS-

---

[1]   Although Defendants dispute many of the factual allegations contained in the Complaint, they assume their truth for purposes of this motion to dismiss only.

Merchant Link arrangement, coupled with Paymentech's ownership of Merchant Link, threatens to give Paymentech "control over a substantial portion of the market for restaurant payment processing services in the United States." (Compl. ¶ 72.)

### D.   <u>Heartland's Antitrust Theories</u>

Heartland principally challenges the MICROS-Merchant Link arrangement under Section 1 of the Sherman Act, 15 U.S.C. § 1, which prohibits conspiracies that unreasonably restrain trade or commerce. (Compl. ¶¶ 60-75.) Specifically, Heartland pleads two Section 1 theories. First, Heartland asserts that the arrangement unlawfully ties two separate products – MICROS's POS systems and Merchant Link's gateway services – and forces customers of MICROS's POS systems to purchase gateway services from Merchant Link. (Compl. ¶¶ 60-70.) Second, Heartland asserts, albeit more vaguely, that Defendants "have conspired and combined in a plan, common design and understanding with specific intent to raise the costs of Paymentech's competitors and thereby give Paymentech control over a substantial portion of the market for restaurant payment processing services in the United States." (Compl. ¶ 72.) In addition, Heartland conclusorily claims, with absolutely no predicate, that the "above-described conduct by Paymentech constitutes unfair competition under New Jersey law." (Compl. ¶ 77.)

8

## ARGUMENT

## I.   A DISTRICT COURT IS REQUIRED TO CAREFULLY SCRUTINIZE AN ANTITRUST COMPLAINT ON A MOTION TO DISMISS

"[L]itigation today is too expensive a process to waste time on fanciful claims: 'When the requisite elements are lacking, the costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint.'" *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 182 (3d Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  Just last Term, the Supreme Court admonished lower federal courts to take a hard look at antitrust complaints under Section 1 of the Sherman Act before allowing them to proceed past a motion to dismiss into expensive discovery.  In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007), the Court mandated dismissal of Section 1 conspiracy allegations so implausible that they proved as consistent with independent, unilateral behavior as with an unlawful conspiracy.  A plaintiff must, the Court held, "provide the 'grounds' of his 'entitle[ment] to relief,'" which "requires more than labels and conclusions, and a formulaic recitation of the

9

elements of a cause of action will not do." *Id.*  "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965.[2]

The instant case involves precisely the types of  claims that the Supreme Court (in *Twombly*) and the Third Circuit (in *Zimmerman*) directed the district courts to dismiss.   Heartland has not alleged sufficient grounds to show its entitlement to relief, and its antitrust Complaint should be dismissed in its entirety.

## II.   HEARTLAND HAS FAILED TO ALLEGE SUFFICIENT GROUNDS TO ESTABLISH ITS ENTITLEMENT TO RELIEF ON ITS TYING THEORY OF ANTITRUST LIABILITY

### A.   POS Systems Buyers Are Not Forced to Purchase Gateway Services; Thus No Impermissible Tying Arrangement Has Been Alleged

On its face, Heartland's Complaint does not satisfy essential elements of a tying claim.   To state a tying claim, a plaintiff must allege (a) that the defendant

---

[2]   The Court rejected the oft-quoted language from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1968 (2007).  Such a rule, the Court stated, would impermissibly allow a complaint to survive a motion to dismiss if it merely "left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery."  *Id.*  Such a rule also was inconsistent with the Court's intervening decision in *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983), which held that, although a court must take as true all facts alleged in the complaint, it may not "assume that [the plaintiff] can prove facts that it has not alleged or that the defendants have violated the antitrust laws in ways that have not been alleged." *Twombly*, 127 S. Ct. at 1969 n.8.

has agreed to sell one product (the tying product), but only on the condition that the buyer also purchases a different (or tied) product that the buyer either does not want or would prefer to purchase elsewhere; (b) that the seller possesses market power in the tying product market; and (c) that a "not insubstantial" amount of interstate commerce in the tied product market is affected. *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 8 (1984); *see also N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5-6 (1958); *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 512-13 (3d Cir. 1998); *Allen-Myland, Inc. v. Int'l Bus. Mach. Corp.*, 33 F.3d 194, 200-01 (3d Cir. 1994); *Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.,* 959 F.2d 468, 475-77 (3d Cir. 1992) (*en banc*).  Importantly, tying requires, as a precondition, that the purchaser of the tying product actually purchase the unwanted tied product.  "Merely accepting something provided for free does not constitute an impermissible tie-in."  *Kellam Energy, Inc. v. Duncan*, 668 F. Supp. 861, 881-82 (D. Del. 1987) (citations omitted); *see also Brokerage Concepts, Inc.*, 140 F.3d at 511.

Here, purchasers of the alleged tying product (MICROS's POS systems) get the alleged tied product (Merchant Link's gateway services) for free.  They are not forced, as a condition of their purchase of the POS system, to purchase gateway services from Merchant Link or anyone else, and thus no impermissible tying

11

arrangement has been alleged.   For this reason alone, Heartland's tying claim should be dismissed.

**B.    Heartland Has Failed to Allege Antitrust Harm**
**Sufficient to Give It Antitrust Standing**

Even if, contrary to the allegations of the Complaint, MICROS required the merchants buying its POS systems also to purchase Merchant Link's gateway services, Heartland would lack standing to challenge that arrangement, having suffered no antitrust injury from it.   Not all alleged injuries conceivably traceable to an antitrust violation can find a remedy under the antitrust laws.   *See Hawaii v. Standard Oil Co.*, 405 U.S. 251, 262 n.14 (1972).   Rather, "[p]laintiffs must prove *antitrust injury*, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.   The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.   It should, in short, be the type of loss that the claimed violations . . . would be likely to cause." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489 (1977) (emphasis added); *see Barton & Pittinos, Inc. v. SmithKline Beecham Corp.*, 118 F.3d 178, 181 (3d Cir. 1997) ("If the injury is not of the requisite type, even though the would-be plaintiff may have suffered an injury as a result of conduct that violated the antitrust laws, he or she has no standing to bring a private action under the antitrust laws to recover for it.").

To determine who suffered an antitrust injury and thus has standing to bring an antitrust claim, courts examine the likely effects of the challenged conduct. Tying arrangements are unlawful under the antitrust laws because they have two anticompetitive effects.  First, the coerced buyer cannot choose to buy the tied product from a competing seller or to avoid buying the tied product at all.  *See Response of Carolina, Inc. v. Leasco Response, Inc.*, 537 F.2d 1307, 1327-28 (5th Cir. 1976); *Kelly v. Gen. Motors Corp.*, 425 F. Supp. 13, 17 (E.D. Pa. 1976). Second, for reasons unrelated to quality or price, tying arrangements may foreclose rivals from competing in the market for the tied product. *See N. Pac. Ry.*, 356 U.S. at 6.

Here, Heartland lacks standing to vindicate either type of antitrust injury. Indeed, only two groups of plaintiffs have standing to challenge the alleged tying arrangement between MICROS and Merchant Link:  (i) MICROS's customers who were supposedly forced to use Merchant Link's gateway services as a condition of purchasing MICROS's POS systems, and (ii) Merchant Link's competitors in gateway services who were supposedly foreclosed from selling gateway services to MICROS's customers.  Because Heartland is not a member of either group, it lacks antitrust standing to challenge the alleged MICROS-Merchant Link tying arrangement. *See, e.g.*, *S. Concrete Co. v. U.S. Steel Corp.*, 535 F.2d 313, 317 (5th Cir. 1976) (granting defendant's motion for summary judgment because plaintiff

neither sold the tied product nor purchased any products from the manufacturer of the alleged tying product – and therefore could not show that it suffered antitrust injury); *Casper v. SMG*, No. 00-3465, 2006 WL 3111132, at *4-5 (D.N.J. Oct. 31, 2006), *aff'd*, No. 06-4848, 2008 WL 227854 (3d Cir. Jan. 28, 2008); *Cent. Chem. Corp. v. Agrico Chem. Co.*, 531 F. Supp. 533, 541 (D. Md. 1982) (dismissing a tying claim because the plaintiff "never claimed that it competes with [defendant] in the sale of" the tied product, nor did it "claim to have actually purchased goods under the contract at issue here"), *aff'd*, No. 83-1603, 1985 WL 15439 (4th Cir. Aug. 23, 1985); *Medtronic Minimed Inc. v. Smiths Med. MD Inc.*, 371 F. Supp. 2d 578, 583-85 (D. Del. 2005) (granting summary judgment on plaintiff's tying claims on the ground that the plaintiff had not suffered antitrust injury where it admitted that it had not attempted (and did not intend to attempt) to sell the alleged tied product in competition with the defendant).[3]

---

[3]  Heartland asserts that it suffered damages "inextricably intertwined" with the alleged tying scheme (Compl. ¶ 67), conspicuously mimicking the language of *Blue Shield v. McCready*, 457 U.S. 465, 484 (1982).  The phrase "inextricably intertwined" does not have talismanic powers, however; as the Third Circuit explained, the "simple invocation of this phrase . . . will not allow a plaintiff to avoid the fundamental requirement for antitrust standing that he or she have suffered an injury of the type – almost exclusively suffered by consumers or competitors – that the antitrust laws were intended to prevent." *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 926 n.8 (3d Cir. 1999).  And the facts of *McCready* make clear that Heartland does not satisfy that requirement.  In *McCready*, the defendant insurance companies conspired to injure psychologists by imposing a "Hobson's choice" on insured

*(cont'd)*

As a practical matter, Heartland is simply displeased by MICROS's business decision to provide its POS systems customers free gateway services to processors of their choice, rather than a direct interface to Heartland.  But antitrust laws give Heartland neither a cause of action nor standing to dictate MICROS's product design.  *See*, *e.g.*, *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 925 n.7 (3d Cir. 1999) ("It is appropriate to emphasize that as a general rule, any firm, even a monopolist, may . . . bring its products to market whenever and however it chooses.").

Accordingly, even if Heartland had stated an antitrust claim, which it has not, Heartland lacks standing to challenge the relationship between MICROS and

---

*(cont'd from previous page)*

patients:  A patient could either forfeit an insurance reimbursement by visiting a psychologist or receive the reimbursement by seeking treatment from another professional.  457 U.S. at 483.  The Supreme Court concluded that insured patients – the very entities on whom the restraint operated – had standing to challenge the conspiracy.  *Id.* at 484.

Unlike the patients in *McCready*, Heartland is not – and cannot be – the principal object of the alleged tying restraint, since it does not consume the alleged tying product.  Rather, the alleged restraint targets restaurants that supposedly become "lock[ed] in" to Merchant Link's gateway technology.  (Compl. ¶ 65.)  Heartland, meanwhile, is merely the restaurants' processing vendor, who objects to the costs of dealing with the gateway technology its customers have chosen to utilize.  This makes Heartland's claimed injury ancillary at best to the alleged tying restraint, and the Third Circuit has squarely held that such an injury does not fall under *McCready*'s "inextricably intertwined" language.  *Allegheny General Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 438 (3d Cir. 2000) (denying standing under *McCready* to plaintiffs who "were merely ancillary victims of ripple effects from the conspiracy," even if their injuries "made the conspiracy more profitable").

Merchant Link.  Heartland's antitrust claims, therefore, should be dismissed with prejudice.

## III.  HEARTLAND HAS FAILED TO ALLEGE SUFFICIENT GROUNDS TO ESTABLISH ITS ENTITLEMENT TO RELIEF ON ITS VAGUER CONSPIRACY THEORY

Heartland's second claim for relief advances a vague conspiracy theory under which MICROS, on the one hand, and Paymentech and its wholly owned subsidiary Merchant Link, on the other hand, have allegedly conspired to raise the costs of Paymentech's rival processors and thereby to give Paymentech control of "a substantial portion of the market for restaurant payment processing service in the United States."  (Compl. ¶ 72.)  Heartland does not, however, allege any predicate facts to support a claim that representatives of MICROS and Paymentech have ever even spoken to each other, let alone conspired.  There is no allegation whatsoever of any meeting or discussion or communication or even hand signal between MICROS and Paymentech that would support Heartland's allegation of a conspiracy between them.  For that reason, Heartland's allegations are even weaker than those the Supreme Court ordered dismissed in *Twombly.*  In *Twombly*, at least, the defendant telecommunications companies allegedly "communicate[d] frequently with one another 'through a myriad of organizations,' providing an opportunity for a conspiracy to form and be conducted without the likelihood of detection."  *Twombly v. Bell Atl. Corp.*, 425 F.3d 99, 103 (2d Cir. 2005) (quoting

16

the complaint ¶ 46), *rev'd*, 127 S. Ct. 1955 (2007).  Here, the Complaint lacks even these bare factual predicates, and its conspiracy claims should be dismissed on this ground alone.

Heartland tries to implicate Paymentech in its alleged conspiracy claim by ignoring Merchant Link's separate corporate existence and arguing that, because Merchant Link agreed to the exclusive gateway arrangement with MICROS and because Paymentech owns Merchant Link, Paymentech has made an agreement with MICROS.  To support this assertion, Heartland alleges that, "[f]or antitrust purposes, Paymentech and Merchant Link constitute a single economic unit." (Compl. ¶ 18.)  In the case on which Heartland can be expected to rely in this regard – *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984) – the Supreme Court held that, as a matter of law, a corporation and its wholly owned subsidiaries have a complete "unity of purpose [and] a common design," and are thus "incapable of conspiring with each other for purposes of § 1 of the Sherman Act."  *Id.* at 771, 777.

While *Copperweld* precludes an antirust plaintiff from arguing that a parent and its wholly owned subsidiary have conspired in violation of Section 1, it does not permit an antitrust plaintiff to pierce a subsidiary's corporate form to assert that a parent corporation has engaged in a conspiracy based solely on the acts of the subsidiary.  *See Gemco Latinoamerica, Inc. v. Seiko Time Corp.*, 685 F. Supp. 400,

403 (S.D.N.Y. 1988) (dismissing an antitrust claim against a parent corporation because – absent allegations of "independent action" by the parent or a cognizable "basis for piercing the corporate veil" – a plaintiff cannot hold a parent "liable for the alleged antitrust violations of [its] subsidiary"); *Reynolds Metals Co. v. Columbia Gas Sys., Inc.*, 669 F. Supp. 744, 750 (E.D. Va. 1987) (dismissing an antitrust claim against a parent corporation where the complaint "seeks to impute liability . . . based upon the alleged wrongful activities of its subsidiaries"); *see also Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 857 (10th Cir. 1999) (expressly rejecting the argument that, under *Copperweld*, a subsidiary and its parent can "be liable for conspiring to restrain trade, even where there is no evidence that both were involved in the challenged conduct").

The absence of any factual predicate to suggest the existence of an agreement between Paymentech and MICROS is wholly understandable because Heartland's hypothesized conspiracy theory is implausible; MICROS in particular would have no incentive to enter into a conspiracy to retrain competition in the payment card processing industry to the detriment of its POS systems merchant customers. Accordingly, the claim requires dismissal under the rule of *Twombly*. In that opinion, the Supreme Court cautioned courts not to permit conclusory antitrust allegations to clog the courts' dockets and sap judicial and private resources in wasteful discovery where the theory underlying the allegations is itself

18

implausible. *See* 127 S. Ct. at 1966-67.  Indeed, complaints resting on inherently implausible antitrust theories have for many years met prompt dismissal in the Third Circuit and elsewhere.  *See, e.g., Brunson Commc'ns, Inc. v. Arbitron, Inc.*, 239 F. Supp. 2d 550, 563-64 (E.D. Pa. 2002) (dismissing complaint where, *inter alia*, alleged conspiracy made no economic sense); *DM Research, Inc. v. College of Am. Pathologists*, 2 F. Supp. 2d 226, 229 (D.R.I. 1998) (dismissal warranted where inference of conspiracy from facts alleged was inherently implausible), *aff'd*, 170 F.3d 53 (1st Cir. 1999); *see also Rochez Bros., Inc. v. N. Am. Salt Co.*, No. 94-1131, 1994 WL 735932, at *3 (W.D. Pa. Nov. 2, 1994) (recognizing that it is essential to assert a "plausible reason to participate in the conspiracy").

*DM Research* – a precedent on which the Supreme Court relied in *Twombly*, 127 S. Ct. at 1966 & n.5 – well illustrates this principle.  In that case, a manufacturer of purified water for clinical laboratories asserted that groups of pathologists had conspired, in violation of Section 1, to limit its growth, eventually driving it into bankruptcy.  *See DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999).  Allegedly, the pathologists accomplished this by adopting guidelines that required laboratories to use water purified on site, not elsewhere.  *Id.* at 54.  The district court dismissed the manufacturer's complaint and the court of appeals affirmed.  "[N]o antitrust lawyer could help but ask almost immediately why" the pathologists' groups "would conspire" this way, reasoned

the court of appeals. *Id.* at 56.  After all, "it is highly implausible to suppose that" the pathologists would "adopt a faulty standard whose main effect would be to raise costs for laboratories that found it cheaper to buy bottled . . . water than to make it on site." *Id.*  And where a Section 1 complaint offers no plausible economic motivation for the alleged conspiracy, it cannot survive a motion to dismiss.

The same is true here.  Heartland asserts that MICROS conspired with Paymentech and with Merchant Link to increase Paymentech's market power in the processing of restaurant payment card transactions and to weaken Paymentech's competitors in that business.  Heartland does not allege any motivation for MICROS to participate in a conspiracy to harm competition in the market for payment card processing – a market in which MICROS's own restaurant and merchant customers are purchasers.  Indeed, it would be entirely inconsistent with MICROS's economic interest to restrain competition in the processing market or to artificially limit in any way the competitive choices its customers have for processing their payment card transactions.  Any such limitation would render MICROS's POS systems less competitively attractive and would lead to losses in goodwill and revenues. *See Brunson Commc'ns, Inc. v. Arbitron, Inc.*, 239 F. Supp. 2d at 563-64 (motion to dismiss granted because economically implausible that allegedly dominant defendant would conspire with

20

plaintiffs' competitors). There simply is no plausible reason for MICROS to enter into the kind of conspiracy that Heartland's Complaint posits.[4]

Because no factual allegations support Heartland's conclusory claim that Paymentech and MICROS have conspired to restrain competition in the payment card processing market, and because such a conspiracy theory is facially implausible, the parties and the Court need not – and should not – engage in costly and wasteful discovery. The conspiracy count of Heartland's antitrust Complaint, therefore, should promptly be dismissed.

## IV.   HEARTLAND'S STATE LAW CLAIM SHOULD BE DISMISSED FOR LACK OF JURISDICTION

In its third count, Heartland asserts a claim of unfair competition against Paymentech under New Jersey state law. Because Heartland's federal antitrust claims fail to pass muster under Rule 12(b)(6), the Court should exercise its discretion under 28 U.S.C. § 1367(c)(3) to dismiss Heartland's state law claim as well.

---

[4]  Heartland alleges that MICROS is compensated for its exclusive arrangement with Merchant Link in the form of consideration under the agreement and a "cut" of the Merchant Link charges to processors. (Compl. ¶ 48.) Such compensation does not, however, provide an incentive for MICROS to conspire to strengthen Paymentech in the processing market to the ultimate detriment of MICROS's customers. Nor is such a conspiracy plausibly explained as a means for MICROS to exploit its alleged market power in the POS systems business; if MICROS were attempting to exploit that alleged market power, it could do so directly without conspiring (and sharing) with Merchant Link or Paymentech.

A "district court[] may decline to exercise supplemental jurisdiction over a [state law] claim" where "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3); *see also Figueroa v. Buccaneer Hotel, Inc.*, 188 F.3d 172, 181 (3d Cir. 1999).  In *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), the Supreme Court made clear that:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.  Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*Id.* at 726.

Here, principles of judicial economy, convenience and fairness would not be served if the Court were to retain jurisdiction over Heartland's state law claim following dismissal of its federal claims.  The state law claim should therefore be dismissed.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court dismiss Heartland's Complaint in its entirety.

Dated:  February 15, 2008                  Respectfully submitted,


*/s/ Shepard Goldfein*
Shepard Goldfein
Peter E. Greene
Cyrus Amir-Mokri
Karen Hoffman Lent
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
Phone:  (212) 735-3000
Fax:  (212) 735-2000
*Attorneys for Defendants*
*Merchant Link, LLC and Chase*
*Paymentech Solutions, LLC*


Richard E. Donovan
Lauri A. Mazzuchetti
KELLEY DRYE & WARREN LLP
200 Kimball Drive
Parsippany, New Jersey 07054
Phone: (973) 503-5900
Fax: (973) 503-5950
*Attorneys for Defendant*
*MICROS Systems, Inc.*

23